UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMANDA MACK, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 1:19-cv-11530-ADB |
| CULTURAL CARE INC., | * * | |
| Defendant. | * * * | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Amanda Mack ("Plaintiff") brings this putative class action against Defendant Cultural Care ("Defendant"), alleging that Defendant double charged Plaintiff and au pairs for travel costs associated with both international airfare and transitioning the au pairs from Defendant's training school to their host families. [ECF No. 24 ("Second Amended Complaint" or "SAC")]. Presently before the Court is Defendant's motion to dismiss Plaintiff's Second Amended Complaint. [ECF No. 26]. For the reasons explained herein, the motion, [ECF No. 26], is GRANTED in part and DENIED in part.

I.   **BACKGROUND**

   A.   **Factual Allegations**

For purposes of this motion, the relevant facts are drawn from the Second Amended Complaint and viewed in the light most favorable to the plaintiff. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (citations omitted). Defendant operates an exchange program that connects au pairs from foreign countries with host families in the United States.

[SAC ¶ 15]. On March 4, 2018, the parties entered into an agreement whereby Defendant would provide an au pair from China that would live in Plaintiff's home in Massachusetts and care for her children. [Id. ¶¶ 1, 23; ECF Nos. 24-1, 24-2]. The terms of the agreement were included in the Host Family Agreement, [ECF No. 24-1], and the fee arrangement for Defendant's services was set forth in the Host Family Financial Responsibility Agreement, [ECF No. 24-2], (together, "the Agreement"). According to the Agreement, the Program Fee for a new family seeking an au pair was $8,695.00 and the Domestic Transportation Fee was between $0.00 and $300.00, depending on the location of the host family. [ECF No. 24-2 at 3]. The Agreement did not provide any further definition of the Program Fee or the Domestic Transportation Fee. [ECF No. 24-2 at 3; SAC ¶¶ 30, 34].

Because the Program Fee and Domestic Transportation Fee were left undefined, Plaintiff looked to Defendant's website for more information. [SAC ¶ 35]. Regarding the Domestic Transportation fee, the website explained that "[t]he [D]omestic [T]ransportation [F]ee *covers* an au pair's transportation to their host family's home from the Au Pair Training School in NY." [Id. ¶ 31 (emphasis in original) (quoting Our Pricing, Cultural Care Au Pair, https://culturalcare.com/pricing (Plaintiff last visited July 10, 2019))]. Regarding the Program Fee, the website provided that the "*Program [F]ee includes* recruitment and screening, Training School, matching services, orientation, *round-trip international airfare*, travel medical insurance coverage and year-long support from your local childcare consultant." [Id. ¶ 36 (emphasis in original) (quoting Our Pricing, Cultural Care Au Pair, https://culturalcare.com/pricing (Plaintiff last visited July 10, 2019))]. The website's Frequently Asked Questions section further explained that "*[t]he [P]rogram [F]ee covers [Defendant's] upfront costs*—a portion of the recruitment, screening and preparation of your au pair; your au pair's training at the Au Pair

Training School; host family and au pair orientations; *international airfare*; a full year of medical and travel insurance; training materials—and year-long support from Cultural Care office staff and your local childcare consultant." [Id. ¶ 38 (emphasis in original) (quoting Frequently Asked Questions, Cultural Care Au Pair, https://culturalcare.com/frequently-asked-questions/ (Plaintiff last visited May 21, 2019))]. Plaintiff therefore "believed that the [P]rogram [F]ee and [D]omestic [T]ransportation [F]ee . . . included the full amount of [an au pair's travel expenses]." [Id. ¶ 44].

Plaintiff paid the Program Fee and the Domestic Transportation Fee of $100.00 for the au pair's transportation from New York City to Plaintiff's home in Boston and the au pair successfully executed the duties set forth in the Agreement from July 2018 until June 2019. [SAC ¶¶ 31, 47–48; ECF No. 32 at 2; ECF No. 35 at 12].

Unbeknownst to Plaintiff, Defendant had similar agreements with au pairs, who were also required to pay a program fee which allegedly "include[s]" and "cover[s]" the au pair's travel costs. [SAC ¶ 54]. Defendant's website for au pairs in China states that the cost includes travel costs from designated departure cities to the United States, as well as transportation costs from the training school to the host families' homes. [Id. ¶ 55]. The au pair websites for other countries provide similar arrangements. See [id. ¶¶ 56–59].

Plaintiff claims that Defendant misrepresented the nature of its fees and led Plaintiff to believe that she would be paying the au pair's travel costs in their entirety and that her au pair would therefore not be charged for her travel costs. [SAC ¶¶ 6, 39–40]. Plaintiff alleges that Defendant's actions constituted a breach of contract and a breach of the implied covenant of good faith, or, if the Court determines that there is no enforceable contract, unjust enrichment. [SAC ¶¶ 73–106]. Plaintiff additionally brings a claim under Massachusetts General Laws

3

Chapter 93A. [Id.]. At the root of Plaintiff's claims is the allegation that the Defendant either double charged her au pair for the same fee or misrepresented the nature of the fees, which in either case, "induced Plaintiff . . . to pay more than [she] would have reasonably paid for the [P]rogram [F]ee and [D]omestic [T]ransportation [F]ee." [Id. ¶ 7].

### B. Procedural History

Plaintiff filed her original complaint on July 12, 2019. [ECF No. 1]. With the agreement of Defendant, [ECF No. 11 at 2], Plaintiff filed an amended complaint on August 14, 2019, [ECF No. 16]. Again, with the agreement of Defendant, [ECF No. 11 at 2], Plaintiff filed the operative Second Amended Compmlaint on September 30, 2019, [SAC]. Defendant filed the instant motion to dismiss on October 21, 2019. [ECF No. 26]. Plaintiff opposed on November 18, 2019, [ECF No. 32], and Defendant filed a reply, [ECF No. 35].

## II. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations omitted). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–

4

45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

When reviewing a motion to dismiss, the Court may consider documents outside of the pleadings, "'the authenticity of which are not disputed by the parties,' making narrow exceptions to the general rule 'for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Álvarez-Maurás v. Banco Popular of P.R., 919 F.3d 617, 622–23 (1st Cir. 2019) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

## III.   DISCUSSION

### A.   Count One: Breach of Contract and the Covenant of Good Faith and Fair Dealing

#### 1.   Enforceability of the Release

Defendant argues that the complaint should be dismissed in its entirety because Plaintiff signed a release as part of the Agreement. [ECF No. 27 at 12–14]. Therefore, for each claim, the Court begins by considering whether Plaintiff has waived the claim.

The release clauses do not bar the Plaintiff's breach of contract claims. "Releases are a form of contract." A.J. Properties, LLC v. Stanley Black & Decker, Inc., 989 F. Supp. 2d 156, 163 (D. Mass. 2013). Because the parties agree that the Agreement included a choice-of-law provision that specified that the Agreement would be governed by Massachusetts law, the Court applies Massachusetts law in interpreting the Agreement. See [SAC ¶ 14; ECF No. 24-1]; see generally [ECF No. 27]. In Massachusetts, "in the absence of fraud a person may make a valid contract exempting himself from any liability to another which he may in the future incur as a result of his negligence or that of his agents or employees acting on his behalf." Schell v. Ford Motor Co., 270 F.2d 384, 386 (1st Cir. 1959). "Whether such contracts be called releases, covenants not to sue, or indemnification agreements, they represent a practice our courts have long found acceptable." Sharon v. City of Newton, 769 N.E.2d 738, 744 (Mass. 2002) (citation and internal quotations omitted). "The parties to a release need not have imagined the specific wrongs released." A.J. Properties, 989 F. Supp. 2d at 163 (citing Naukeag Inn, Inc. v. Rideout, 220 N.E.2d 916, 918 (Mass. 1966)). "Doubts about the interpretation of a release must be resolved in the plaintiff's favor," but where a release is comprehensive and unambiguous it will be enforced as written. Cormier v. Cent. Mass. Chapter of Nat. Safety Council, 620 N.E.2d

784, 786 (1993) (citing Lechmere Tire & Sales Co. v. Burwick, 277 N.E.2d 503, 506 (Mass. 1972)).

In this case, the Agreement contained two releases that Defendant argues preclude the claims at issue. [ECF No. 24-1 at 3]. The first release clause states:

> Host Family acknowledges that [Defendant] is not responsible for any expenses incurred by the au pair or by the Host Family, including, but not limited to, telephone bills, automobile expenses, property damage, travel expenses, and health expenses not covered by insurance. Accordingly, Host Family agrees not to seek payment from [Defendant] for any of these expenses or costs.

[ECF No. 24-1 at 3]. Defendant contends that this clause "unambiguously precludes [Plaintiff] from seeking reimbursement of any expenses her family incurred to cover their au pair's 'travel expenses.'" [ECF No. 35 at 10 (emphasis omitted)].

At the motion to dismiss stage, the Court interprets any ambiguity in the release language in favor of the Plaintiff. See Cormier, 620 N.E.2d at 786 (citing Lechmere Tire & Sales Co., 277 N.E.2d at 506). Defendant's interpretation suggests that Defendant would not be responsible for expenses that it agreed to pay using the funds provided by the host family. It seems clear, however, that the purpose of the release is instead to ensure that Defendant is not held responsible for travel expenses that are incurred during the au pair's tenure with a family—for example, for travel related to a family vacation or an au pair's personal travel. See Nadherny v. Roseland Prop. Co., 390 F.3d 44, 49 (1st Cir. 2004) ("[A] court may look to related provisions of a contract to cast light on the meaning of disputed language."). Therefore, the Court finds that the first release does not bar the breach of contract claims.

The second release clause states:

> Host Family agrees on their own behalf and on behalf of their children, to irrevocably, unconditionally, and fully remise, release, and forever discharge [Defendant] and [Defendant]'s respective officers, directors, successors, assigns, attorneys, insurance companies, agents, employees and affiliates (all of said

>persons hereinafter, in the aggregate, being referred to as "Released Parties"), from any and all claims or causes of action which Host Family has or may hereafter have, which arise out of injury, damage, or loss of any other kind to the Host Family or their property resulting from participation in the [Defendant's] program. This includes, without limitation, the au pair's performance of services for and involvement with the Host Family, regardless of how such injury, damage, or loss may arise and regardless of whether the injury, damage, or loss is in whole or in part caused by the negligence of any one or more of the Released Parties. Host Family further agrees to indemnify and hold harmless the Released Parties from and against any losses, claims, damages, or liabilities related to or arising out of the participation of Host Family in the [Defendant's] program, including, but not limited to, any injury or damage to the Host Family or their children that the au pair causes or to which s/he contributes.

[ECF No. 24-1 at 3]. Plaintiff maintains that this release does not apply because Defendant materially breached the contract, [ECF No. 32 at 8–9], while the Defendant maintains that this broadly worded release bars all claims against Defendant, [ECF No. 35 at 6].

The Court finds that, when read in context with the rest of the Agreement, this release ensures Defendant is not liable for "any and all claims" that arise from "the au pair's performance of services" and "any injury or damage to the [Plaintiff] or [her] children that the au pair causes." [ECF No. 24-1 at 3 (emphasis added)]. Other courts have interpreted analogous provisions in other Cultural Care contracts similarly. See Doe v. Cultural Care, Inc., No. 10-cv-11426, 2011 WL 1048624, at *2, *6 (D. Mass. Mar. 17, 2011) (finding that a similar release barred plaintiff's negligence and negligent infliction of emotional distress claims against Cultural Care when au pair allegedly sexually abused the plaintiff's son). Accordingly, for purposes of the motion to dismiss, the Court finds that the releases agreed to by Plaintiff do not bar the breach of contract claim for the alleged double charging or, alternatively, misrepresentation of the au pair's travel costs. [SAC ¶¶ 73–88].

    2.    <u>Breach of Contract</u>

Even assuming for purposes of the motion to dismiss that Plaintiff did not waive or release these claims, however, Plaintiff has nonetheless failed to plead a breach of contract

claim. In Massachusetts, a breach of contract claim requires that a plaintiff plead facts sufficient to establish: (1) "a valid and binding contract exists," (2) "that the defendant breached the contract's terms," and (3) "that the plaintiff suffered damages as a result of the breach." Scholz v. Goudreau, 901 F.3d 37, 43 (1st Cir. 2018). "Plaintiffs . . . must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep." Brooks v. AIG Sunamerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007).

Plaintiff acknowledges that she signed the Agreement on March 4, 2018, forming a valid contract, which is sufficient to plead the first element of a breach of contract claim. [SAC ¶¶ 23, 27]; see also [ECF No. 27 at 9–10]. Additionally, Plaintiff has sufficiently pled that she was damaged by Defendant's alleged breach because she was induced "to pay more than [she] would have reasonably paid for the program fee and domestic transportation fee." [SAC ¶ 7]. Plaintiff has failed, however, to plead facts sufficient to establish that Defendant breached a term of the contract by double charging or misrepresenting who was to pay for the au pair's travel costs. [SAC ¶¶ 73–88].

Plaintiff contends that Defendant breached the Agreement by collecting money for the au pair's travel costs twice (from Plaintiff and the au pair), or alternatively, by collecting "an amount in excess of Defendant's actual costs." [SAC ¶ 62]. Plaintiff paid her $8,695.00 Program Fee and her $100.00 Domestic Transportation Fee for her au pair's transportation from New York City to her home in Massachusetts. [SAC ¶¶ 31, 33, 49; ECF No. 32 at 4; ECF No. 35 at 12]. Plaintiff does not allege Defendant failed to perform any obligation required by the contract beyond double charging or charging a fee that exceeded the actual costs of the au pair's travel. [SAC ¶¶ 80–81]. Here, the Agreement did not include a promise by

Defendant relative to how Defendant charges another party (like the au pair) for fees, or how it formulates its respective services fees. See [ECF No. 24-1, 24-2]; Thakkar v. United States, 389 F. Supp. 3d 160, 178 (D. Mass. 2019) (finding that plaintiff failed to state a breach of contract claim when he did not cite "any specific contractual promise [d]efendants failed to keep pursuant to his enlistment contract").

Plaintiff argues that because "Domestic Transportation Fee" and "Program Fee" are not specifically defined terms, the contract is ambiguous and the meaning of the terms is a question of fact requiring the use of extrinsic evidence to clarify the ambiguity. [SAC ¶ 42; ECF No. 32 at 3]. She asserts that because the Defendant's website states that the Domestic Transportation Fee "covers" an au pair's transportation from New York City to a Host Family's home, she reasonably believed that her fee would "pay the full amount of" domestic travel for the au pair. [SAC ¶ 44; ECF No. 32 at 4]. Similarly, Plaintiff further alleges that she reasonably understood the Program Fee to include the au pair's international airfare based on the website's assurance that the fee "covered" and "included" the cost of the au pair's international airfare. [SAC ¶ 75].

While the parties dispute the meaning of the definitions of "cover" and "include" on Defendant's website, the Court does "not admit parol evidence to create an ambiguity when the plain language is unambiguous." Gen. Convention of New Jerusalem in the U.S.A., Inc. v. MacKenzie, 874 N.E.2d 1084, 1087 (Mass. 2007) (citation omitted). Although the Domestic Transportation and Program Fee lack express definition, the Court finds no ambiguity in the explicitly stated prices of each respective service fee. [ECF No. 24-2]; see Warren Freedenfeld Assocs., v. McTigue, 531 F.3d 38, 49 (1st Cir. 2008) ("Under Massachusetts law, a contract that is free from ambiguity is to be interpreted according to its plain meaning.").

Even if the Court were to accept the Plaintiff's extrinsic evidence and its interpretation of such evidence, it still does not create a contractual obligation related to how the Defendant bills third parties like an au pair for its services. The Plaintiff does not claim that she was charged twice, [ECF No. 32 at 17], and acknowledges that she was aware that the Defendant and the au pair contracted separately, [SAC ¶ 20]. Neither the language of the contract nor a reading of the website in favor of the Plaintiff create such an obligation. Accordingly, the Court finds that even if Defendant engaged in the alleged double charging scheme, its participation in such a scheme did not breach any contractually obligated promise between the Defendant and the Plaintiff.

### 3. Breach of Implied Covenant of Good Faith and Fair Dealing

The Court finds that Defendant's alleged charging of a third party for travel costs was not a breach of the implied covenant of good faith and fair dealing because Plaintiff still received the benefits of the contract. In Massachusetts, "'[e]very contract implies good faith and fair dealing between the parties to it.'" T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703 (Mass. 2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991)). "The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." Id. at 704 (citation and internal quotation marks omitted). The duty, however, "is only as broad as the contract that governs the particular relationship." Ayash v. Dana–Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005). "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." Speakman v. Allmerica Fin. Life Ins., 367 F. Supp. 2d 122, 132 (D. Mass. 2005).

Again, the contract makes no promise as to what will be billed to a third party or how Defendant bills or allocates service fees, and Plaintiff cannot create those duties by claiming a breach of the covenant of implied good faith and fair dealing. See [ECF Nos. 24-1, 24-2]; Dexter v. Dealogic, LLC, 390 F. Supp. 3d 233, 244 (D. Mass. 2019) (dismissing breach of implied covenant of good faith and fair dealing when plaintiff alleged defendant misrepresented quality of its product in inducing her to work for the company because defendant "made no promises concerning its product in her employment contract."); A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth., 95 N.E.3d 547, 561 (Mass. 2018) (dismissing claim because defendant's termination of plaintiff's contract to obtain a better price was not a violation "[u]nder terms of the contract"). Because Plaintiff's interpretation as to how the fees would be charged or allocated as between host families and au pairs does not stem from any language in the Agreement, [SAC ¶ 31; ECF No. 27 at 6–7], the Court will not allow a claim for a breach of the covenant of good faith and fair dealing.

Moreover, Plaintiff has received the benefits of the contract, which in itself precludes finding a breach of the implied covenant of good faith and fair dealing. See Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013) (dismissing good faith and fair dealing claim because "the guaranteed 'fruits' of the [plaintiffs'] two loan contracts with [defendant] were the loan funds, which the [plaintiffs] unquestionably received"); Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 239 (1st Cir. 2013) (dismissing good faith and fair dealing claim because defendant's conduct did not injure plaintiff's "ability to obtain the contract's fruits"). As Plaintiff acknowledges, the "au pair resided at Plaintiff's house and provided au pair services for one year," at the agreed-upon price. [SAC ¶ 48; ECF No. 24-2]. In other words, Plaintiff contracted to pay specific service fees for services to be rendered by Defendant, [ECF

12

No. 24-2], and Defendant rendered those services, [SAC ¶¶ 47–49]. Plaintiff's claim that Defendant breached the covenant of good faith and fair dealing by charging a third party a potentially duplicative service fee did not deny Plaintiff the benefit of her bargain and does not implicate a contracted for right or promise.

### B. Count Two: Violation of Chapter 93A

#### 1. Enforceability of the Release

Plaintiff argues that the release is not a basis for dismissing her claim under Chapter 93A. [ECF No. 32 at 6–9]. As a preliminary matter, the Court notes that "[a] person may waive his statutory and even his constitutional rights." Spence v. Reeder, 416 N.E.2d 914, 922 (Mass. 1981). "Where a private right is granted in the public interest to effectuate a legislative policy," however, "waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704 (1945).

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A, § 2. The primary goal of the statute is to protect consumers. V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 416 (1st Cir. 1985). The Massachusetts Supreme Judicial Court has stated that it "ordinarily would not effectuate a consumer's waiver of rights under c. 93A." Canal Elec. Co. v. Westinghouse Elec. Corp., 548 N.E.2d 182, 187 (Mass. 1990) (emphasis omitted). "[C]ourts are less likely to enforce contractual waivers to liability under [Chapter] 93A arising out of disputes involving a consumer as opposed to two commercial entities for public policy reasons." Doe, 2011 WL 1048624, at *7.

Notably, a court in this district has already found a similar Cultural Care release unenforceable as it pertains to Chapter 93A. Doe, 2011 WL 1048624, at *8. In Doe, after an au

13

pair sexually abused the plaintiff's son, the plaintiff brought a Chapter 93A claim alleging that Cultural Care had failed to disclose that the au pair had been dismissed by three prior families. Id. at *2–4. At the summary judgment stage, the court held that the release did not preclude the Chapter 93A claim, reasoning that the release violated public policy because the "claim [was] mainly grounded in [d]efendants' alleged fraudulent representations and practices . . . ." Id. at *8.

The Agreement at issue here included a release almost identical to that considered in Doe and Plaintiff's claim is similarly based on allegations of unfair and deceptive conduct. [ECF No. 32 at 8]. While the facts in Doe are distinguishable from the present facts, the release may not bar Plaintiff's Chapter 93A claim when allowing such a release "would destroy the very purpose of the statute." Spence, 416 N.E.2d at 924. Accordingly, the Court finds the release does not bar the Plaintiff's Chapter 93A claim.

Additionally, Defendant claims that the Chapter 93A claim is duplicative of Plaintiff's contract claims. [ECF No. 27 at 13–14]. Chapter 93A claims are duplicative when the alleged misconduct is expressly addressed by the contract. See Canal, 548 N.E.2d at 183 (enforcing a liability release that barred a breach of warranty claim, which in turned barred plaintiff's Chapter 93A claim because the release covered the alleged misconduct); see also Skehel v. DePaulis, No. 13-cv-11202, 2017 WL 2380164, at *2 (D. Mass. June 1, 2017) ("[The] Chapter 93A claims are derivative of their unsuccessful claims for breach of contract, breach of the covenant of good faith and fair dealing, and negligence, and thus, they cannot succeed."); Murphy v. Nat'l Grange Mut. Ins. Co., No. 13-cv-11363, 2014 WL 5307671, at *6 (D. Mass. Oct. 16, 2014) (noting that because "the claim for violation of Massachusetts General Laws chapter 93A [wa]s derivative of the underlying breach of contract claim . . . [s]ummary judgment as to the underlying contract

claim foreclose[d] a derivative chapter 93A claim"). If separate arguments support a Chapter 93A claim, however, it may survive as an independent cause of action. See Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 335 (D. Mass. 2012), aff'd, 527 F. App'x 20 (1st Cir. 2013) ("As long as a litigant offers separate arguments in support of her Chapter 93A claim, it may be entertained irrespective of whether other colorable bases for relief remain.").

Here, Plaintiff alleges (1) that the Defendant breached the terms of the Agreement by double charging for travel costs based on her understanding of the contract language, and (2) that Defendant was unfair or deceptive by concealing or misrepresenting the actual travel costs and then double charging for those costs. [SAC ¶¶ 81, 82 92]. These claims are sufficiently factually distinct to allow the 93A claim to go forward. See, e.g., Pimental v. Wachovia Mortg. Corp., 411 F. Supp. 2d 32, 40 (D. Mass. 2006) ("[Plaintiff's] Chapter 93A claim might be sustainable if [defendant's] actions in entering into the contract were found to be unfair or deceptive.").

2. Deceptive Conduct Under Chapter 93A

To state a claim under Chapter 93A, a plaintiff must allege that the defendant used "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Mass. Gen. Laws ch. 93A, § 2(a). Although there is no static definition or precise test for determining whether conduct is unfair or deceptive, "Massachusetts courts have laid out a number of helpful guideposts . . . ." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 154 (D. Mass. 2014). "[A]n act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" Walsh v.

15

TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486–87 (Mass. 2004)).

Liability under Chapter 93A for deceptive conduct is not limited to false or misleading affirmative statements. "A business may also violate [Chapter] 93A through an omission, as when it 'fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.'" Carlson v. The Gillette Co., No. 14-cv-14201, 2015 WL 6453147, at *4 (D. Mass. Oct. 23, 2015) (quoting 940 Mass. Code Regs. § 3.16(2)). Misrepresentations are unfair or deceptive when they are so closely related to the essence of the product or service that a reasonable consumer would not have proceeded with a purchase or engagement without the misrepresentation. See Aspinall, 813 N.E.2d at 488 ("[A]n advertisement is deceptive when it has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted . . . ."); see also Crane v. Sexy Hair Concepts, LLC, No. 17-cv-10300, 2017 WL 8728961, at *3 (D. Mass. Oct. 10, 2017) (finding deception where shampoo bottle labeled "Sulfate-Free" contained sulfate); Batishchev v. Cote, No. 054074E, 2007 WL 1829387, at *1 (Mass. Super. Ct. June 7, 2007) (finding defendants liable under Chapter 93A for intentionally misrepresenting which condo plaintiffs were purchasing).

For example, in Tomasella v. Nestle USA, which concerned a defendant failing to disclose the use of slave labor by a manufacturer in its supply chain, the court held that the plaintiff failed to state a claim under Chapter 93A because the omission would not have "enticed a reasonable consumer" to purchase the product when they otherwise would not have. Tomasella v. Nestle USA, Inc., 364 F. Supp. 3d 26, 35 (D. Mass. 2019), aff'd, 962 F.3d 60 (1st Cir. 2020) (citation omitted). Further, the defendant in that case admitted to the conduct on its

16

website, so there was no deceit. Id. at 36. Similarly, in Carlson v. The Gilette Co., the defendant used the word "guaranteed" to describe a battery's lifetime, despite some batteries not performing to the guarantee's standard. 2015 WL 6453147, at *5. The court found that the guarantee only applied to batteries in storage, not actually in use, and that no reasonable person would interpret the word "guaranteed" to mean perfect performance for a battery. Id. at *5–6.

Here, Plaintiff has failed to allege that a reasonable consumer would have acted differently in reliance on Defendant's alleged misrepresentations on its website. [SAC ¶¶ 31–39]. As stated, Plaintiff claims that the Defendant's website misrepresented its travel fees, which led her to believe that her payment would cover the totality of the au pair's travel costs. [Id. ¶ 39]. Plaintiff also asserts that Defendant "did not direct [Plaintiff] to consult the websites for au pairs to discover what Defendant charges au pairs to join Defendant's program," [id. ¶ 95], and that "[a] conspicuous host family website disclosure that host families and au pairs each paid part of the au pair's international and domestic travel would have prevented the deception," [id. ¶ 96]. Plaintiff has, however, failed to allege facts sufficient to establish that a reasonable person would understand the Defendant's representations on its website, but outside the parameters of the operative written agreement, to mean that Defendant would not or could not charge the au pairs a service fee, especially when Plaintiff knew that the Defendant entered into separate contracts with the au pairs. [Id. ¶¶ 20, 31, 36, 39]. This is particularly true as the Defendant's website made clear that the au pairs, in addition to the Plaintiff, would be charged travel fees, [id. ¶¶ 55–59], and where Plaintiff acknowledges seeing the link to the au pair's website, see [id. ¶ 41 ("The website advertising au pair services to host families does not direct potential customers to review the websites that advertise for the hiring of au pairs to become aware of any costs the au pairs pay to Defendant . . . .")]. Accordingly, the Court finds that Plaintiff has failed

17

to allege sufficient facts to establish that the Defendant misrepresented who would pay for travel costs on its website.

### 3. Unfair Conduct Under Chapter 93A

Whether Defendant's alleged double billing practice itself violated Chapter 93A is a closer question. "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness'; 'is immoral, unethical, oppressive, or unscrupulous'; . . . 'causes substantial injury to consumers,'" and is "of an egregious, non-negligent nature." Walsh, 821 F.3d at 160 (first quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975); then citing Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014)). While "Massachusetts leaves the determination of what constitutes an unfair trade practice to the finder of fact," that determination is "subject to the court's performance of a legal gate-keeping function.'" Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 69 (1st Cir. 2009), decision clarified on denial of reh'g, 559 F.3d 1 (1st Cir. 2009).

Billing practices that inflate the actual price of a product or service without adding additional value are unfair or deceptive under Chapter 93A. See Commonwealth v. DeCotis, 316 N.E.2d 748, 755 (Mass. 1974) ("The extraction of a resale fee for no services rendered in these circumstances was an unfair act or practice under [Chapter 93A]."); see also Callahan v. Shepherd, No. 17-cv-10508, 2018 WL 4907525, at *4 (D. Mass. Oct. 9, 2018) (finding that a plaintiff stated a claim under Chapter 93A by alleging that defendant engaged in double billing for construction work on their property). Accepting the pleadings as true, Plaintiff has sufficiently pled that Defendant failed to disclose a billing practice that inflated the price of its services or was otherwise unfair. [SAC ¶ 7]. Plaintiff plausibly alleges that Defendant routinely charged two different parties, the host families and the au pairs, for the same domestic

18

and international travel costs without rendering any additional services. [SAC ¶¶ 7, 62]. While Plaintiff herself was not double billed and the billing practice did not impact the au pair services that Defendant provided, Plaintiff has nonetheless pled that the double billing had a direct impact on the price of the travel fees, and price is a "central characteristic" of Defendant's product. See Tomasella, 364 F. Supp. 3d at 33; [SAC ¶ 7].

Such double billing is a sufficient economic harm to state a claim under Chapter 93A. See O'Hara v. Diageo-Guinness, USA, Inc., 306 F. Supp. 3d 441, 458 (D. Mass. 2018) ("Paying for a product whose price was artificially inflated by deceptive advertising is an economic injury cognizable under Chapter 93A."), on reconsideration, 370 F. Supp. 3d 204 (D. Mass. 2019); Bellermann v. Fitchburg Gas & Elec. Light Co., 18 N.E.3d 1050, 1060 n.10 (Mass. 2014) ("Where a defendant's unfair or deceptive conduct causes customers to receive a product or service worth less than the one for which the customers paid, the customers may pursue a class action under G.L. c. 93A to recover the amount by which they overpaid."); see also Liu v. Amerco, 677 F.3d 489, 495 (1st Cir. 2012) ("Here, . . . plaintiff has alleged that the defendant's attempted price fixing scheme directly raised the price charged . . . [resulting in] economic damage by any test."). Here, Plaintiff has sufficiently pled that Defendant's undisclosed double charging caused her to pay an inflated cost for travel expenses, [SAC ¶ 62, 97], and that charging both an au pair and the Plaintiff a fee for the same service would influence a consumer's decision to use the Defendant's services and the price of those services, [SAC ¶¶ 7, 63].

### C. Count Three: Unjust Enrichment

Finally, Defendant argues that Plaintiff's unjust enrichment claim must be dismissed because Plaintiff has an adequate remedy at law. [ECF No. 27 at 25]. The First Circuit has

recently clarified that a "common law claim for unjust enrichment . . . fails because a party with an adequate remedy at law cannot claim unjust enrichment." Shaulis v. Nordstrom, Inc., 865 F.3d 1, 16 (1st Cir. 2017) (citation omitted). "The viability of [a plaintiff's] Chapter 93A claim[] is beside the point. [Plaintiff's] unjust enrichment claims *must be dismissed* because an adequate remedy at law was undoubtedly available to her through Chapter 93A." Tomasella v. Nestlé United States, 962 F.3d 60, 84 (1st Cir. 2020) (emphasis added) (citation and internal quotation marks omitted); see Pershouse v. L.L. Bean, Inc., 368 F. Supp. 3d 185, 190 (D. Mass. 2019) ("The availability of an adequate remedy at law, even if ultimately unviable, precludes a claim for unjust enrichment."), appeal dismissed, No. 19-1422, 2019 WL 5571255 (1st Cir. Sept. 20, 2019). Plaintiff's unjust enrichment claim is therefore DISMISSED.

## IV.     CONCLUSION

Accordingly, Defendant's motion to dismiss, [ECF No. 26], is GRANTED in part and DENIED in part. Specifically, Counts I and III of the complaint are dismissed. Count II may go forward, insofar as Plaintiff claims that Defendant's alleged double billing practice violated Chapter 93A.

**SO ORDERED.**

August 12, 2020                                                    /s/ Allison D. Burroughs
                                                                    ALLISON D. BURROUGHS
                                                                    U.S. DISTRICT JUDGE